THE MIDLAND SAVINGS AND LOAN COMPANY V.
JOSEPH S. SOLOMON *et al.*

No. 14,027.   (79 Pac. 1077.)

SYLLABUS BY THE COURT.

1. BOND AND MORTGAGE—*"Proper Law of the Contract" May be Stipulated.* The parties to a lawful bond for the payment of money may stipulate that it shall be payable in, and be governed by the laws of, a state of their choice; and if such a stipulation be made fairly, and in good faith, it is a duty of the courts of another state in which suit may be brought to recover on the bond to give effect to it.

2. ———— *Location of the Mortgaged Property Immaterial.* The fact that, as an incident to such bond, the obligor has secured it by a mortgage upon real estate located in the foreign state, where suit is brought to enforce it, does not abrogate the stipulation, and the bond must nevertheless be interpreted by the law of the state where it is payable.

3. ———— *Duty of Courts of This State, Regardless of the Usury Law.* The courts of this state should not refuse, on the ground of a supposed public policy, to enforce collection of sums due on a lawful bond solvable by the laws of a foreign state, and not given in evasion of the usury laws of this state, merely because, if construed by the laws of this state, the rate of interest would be higher than that allowed by the laws here.

Error from Allen district court; J. F. THOMPSON, judge *pro tem.* Opinion filed March 11, 1905. Reversed.

*A. J. Bryant,* for plaintiff in error; *Campbell & Goshorn,* of counsel.

*J. B. Atchison,* and *Ewing, Gard & Gard,* for defendants in error.

The opinion of the court was delivered by

BURCH, J.: The district court sustained a demurrer to a petition for recovery upon a bond and mortgage given to a Colorado building and loan association. It must have done so either upon the ground

that the contract was in fact a Kansas contract, and therefore discharged under the laws of this state relating to usury, or because the usury laws of this state are applicable to it even though it be a Colorado contract. The mortgage covers real estate in Allen county. It recites that the mortgagor is a resident of that county, and it was acknowledged in that county; but the sums to become due upon the bond are made payable in Colorado. It expressly provides that its conditions are to be performed in the state of Colorado, and that it shall in all respects be governed by, and entitled to the benefits of, the laws of that state; and the petition expressly alleged that the bond and mortgage were delivered to the plaintiff in that state.

Since the instruments in suit were delivered in Colorado, the contract was made there. (*Briggs v. Latham,* 36 Kan. 255, 13 Pac. 393, 59 Am. Rep. 546.)

"Delivery is an essential part of the execution of any instrument. It is not enough to sign and seal a bond. It is effectual only when it is delivered to the party interested in it, or to some one for him. The bond might have been signed wherever it was most convenient for the obligor to give attention to it, but it was an ineffectual and useless paper until delivery by the obligor. The delivery was made in Delaware, where it was to be performed. It was made a binding obligation; its execution was completed in that state." (*Baum v. Birchall,* 150 Pa. St. 164, 169, 24 Atl. 620, 30 Am. St. Rep. 797.)

The contract having been made in Colorado, and the sums due upon it having been made payable there, the presumption of law is that it is solvable by the laws of that state. That presumption, however, is a rebuttable one, and if nothing further appeared the court would have the right to take into consideration extraneous facts in ascertaining the true intention of the parties. But an express provision of the contract makes it subject to, and entitled to the benefits of, the laws of Colorado. Presumably the parties knew what

they desired, and understood the force of the language they used; and having agreed upon the matter, and reduced their agreement to writing, further inquiry, except, of course, for fraud and the like, is precluded.

"The contract must be adjudged by its express terms, no matter where the parties were when it was made. And when those terms are clear, explicit, involved in no doubt whatever, they must prevail, and it is the duty of the courts to enforce them according to their literal meaning." (*Bennett, Appellant, v. Building & Loan Assn.,* 177 Pa. St. 233, 238, 35 Atl. 684, 685, 34 L. R. A. 595, 55 Am. St. Rep. 723.)

"There is no reason why their making their contract in one state instead of in the other, nor why their making it payable in one state instead of in the other, should have a controlling influence over the question. Doing either will, in the absence of other evidence, serve to show their purpose and control the result. But not so when they otherwise distinctly provide or when from other facts their intention can be more satisfactorily ascertained." (*Dugan v. Lewis,* 79 Tex. 246, 253, 14 S. W. 1024, 1026, 12 L. R. A. 93, 23 Am. St. Rep. 332.)

"Where, however, the parties to the contract have themselves expressly declared that their contract shall be held and construed as made with reference to a certain jurisdiction, that shows by what law they intended the transaction to be governed. And, as said by Phillimore, 4 Int. Law, 469: 'It is always to be remembered that in obligations it is the will of the contracting parties, and not the law, which fixes the place of fulfilment—whether that place be fixed by *express words* or by tacit *implication*—as the place to the jurisdiction of which the contracting parties elected to submit themselves.' 'In every forum,' said Chief Justice Marshall, in *Wayman v. Southard,* 10 Wheat. 1, 48, 'a contract is governed by the law with reference to which it is made.' There is no room for inference or presumption as to what that intention was when it is expressed in the contract. *Pritchard v. Norton,* 106 U. S. 124, 1 Sup. Ct. 102, 27 L. Ed. 104." (*Union Central Life Ins. Co. v. Pollard,* 94 Va. 146,

151, 26 S. E. 421, 422, 36 L. R. A. 271, 64 Am. St. Rep. 715.)

"When the intention of the parties to a contract, as to the law governing the contract, is expressed in words, this expressed intention determines the proper law of the contract and, in general, overrides every presumption." (Dicey, Confl. Laws, 567.)

(See, also, 9 Cyc. 665; 22 A. & E. Encycl. of L. 1325.)

The fact that the mortgaged land lies in a state different from that in which the contract is to be performed will not override express stipulations relating to the law by which it is to be governed. Such a circumstance may be important when the contract is open to interpretation, but otherwise it is not controlling. (*Loan Association v. Forter,* 68 Kan. 468, 75 Pac. 484.)

"Here two preliminary questions arose, the first of which was, whether the *lex loci* of the contract of 1815 was Rhode Island or Kentucky. By the usury laws of the latter, the contract, and all the securities given for it, are void, both for principal and interest. By the laws of the former, although it is prohibited to take more than six per cent. interest, and a penalty imposed for the offense, the act does not render the contract void, certainly not for the principal sum. . . . With regard to the locality of the contract of 1815, we have no doubt, that it must be governed by the law of Rhode Island. The proof is positive that it was entered into there, and there is nothing that can raise a question but the circumstance of its making a part of the contract that it should be secured by conveyances of Kentucky land. But the point is established, that the mere taking of foreign security does not alter the locality of the contract with regard to the legal interest. Taking foreign security does not necessarily draw after it the consequence that the contract is to be fulfilled where the security is taken. The legal fulfilment of a contract of loan, on the part of the borrower, is repayment of the money, and the security given is but the means of securing what he has contracted for, which, in the eye of the law, is to pay where he borrows, unless another place of pay-

Loan Co. v. Solomon.

ment be expressly designated by the contract. No tender would have been effectual to discharge the mortgage, unless made in Rhode Island. On a bill to redeem, a court of equity would not have listened to the idea of calling the mortgagee to Kentucky in order to receive a tender." (*De Wolf v. Johnson,* 10 Wheat. 367, 382, 383, 6 L. Ed. 343.)

"The contract for the loan was made in the state of New York; the money was advanced there; the note and mortgage delivered there; and the loan was to be repaid there. The fact that one of the incidents of the debt consisted of a lien, by way of mortgage, upon lands in Ohio, to secure payment, does not change the law in this respect. It was a contract not only made, but to be performed in the state of New York, and must be governed by the laws of that state." . (*Lockwood, Survivor, etc., v. Mitchell et al.,* 7 Ohio St. 387, 405, 70 Am. Dec. 78.)

"The only significance that can be attached to a mortgage on real estate, in disposing of a question as to usury in the obligation to secure which it has been given, is as an aid in determining the place of performance when the obligation is silent on that point. Minor, Confl. Laws, p. 390; 2 Jones, Mort. §660." (*United States Savings & Loan Co. v. Harris,* 113 Fed. 27, 32.)

"Notes executed and made payable in one state are, as a rule, governed by the laws of that state; and the fact that a trust deed given as security includes land in another state, or that the maker lived and intended to use the money in the latter state, does not change the rule." (*Central Trust Co. of New York v. Burton,* 74 Wis. 329, 43 N. W. 141.)

"The loan is the principal thing, or at least it should be so in contemplation of the law. The security is an incident to the loan; an important, probably an indispensable, incident, it is admitted; yet as such it should not be held to assume such colossal legal importance as to control the construction of the loan contract." (Webb, Usury, §275.)

(See, also, *Tenny v. Porter,* 61 Ark. 329, 33 S. W. 211; *Brower v. Life Ins. Co.,* 86 Fed. 748, 751; *Pacific*

*States Savings, Loan & Bldg. Co. v. Greene,* 123 Fed. 43, 59 C. C. A. 167; Story, Confl. Laws, 8th ed., 287*a*.)

The rule announced by these authorities is of special force in this state, where the mortgage is a mere incident of the debt, vests no title to the land, creates no right of possession, and operates solely as security.

The contract provided that certain payments agreed to be made should be credited on the defendants' stock subscription, and not as a repayment of the loan. The petition itemized all payments the debtor had made. By disregarding the stipulations of the contract, and making an arbitrary calculation of its own, the court was able to produce a result indicating that the contract would be usurious under the laws of this state, and that more than the principal and the Kansas rate of interest already had been paid.

But the petition pleaded the laws of Colorado, showing the contract to be a lawful one and not subject to the defense of usury in that state. Therefore, it was valid here. (*Bedford v. Eastern Building and Loan Assn.,* 181 U. S. 227, 21 Sup. Ct. 597, 45 L. Ed. 834; *Pioneer Savings & L. Co. v. Nonnemacher,* 127 Ala. 521, 30 South. 79; *Ware v. Building Association,* 95 Va. 680, 29 S. E. 744, 64 Am. St. Rep. 826; *Pioneer etc. Loan Co. v. Cannon,* 96 Tenn. 599, 36 S. W. 386, 33 L. R. A. 112, 54 Am. St. Rep. 858; *Bennett, Appellant, v. Building and Loan Assn.,* 177 Pa. St. 233, 35 Atl. 684, 34 L. R. A. 595, 55 Am. St. Rep. 723; *Interstate Building and Loan Ass'n v. Edgefield Hotel Co.,* 120 Fed. 422; *Peoples B. & L. Assn., Appellant, v. Berlin,* 201 Pa. St. 1, 50 Atl. 308, 88 Am. St. Rep. 764; *Miller v. Tiffany,* 1 Wall. 298, 17 L. Ed. 540.)

The courts of this state should not refuse, on the ground of a supposed public policy, to enforce collection of sums due on a lawful bond solvable by the laws of a foreign state, and not given in evasion of the usury laws of this state, merely because if construed by the laws of this state the rate of interest would be

higher than that allowed by the laws here. The position assumed by some courts in reference to this matter, when considering building and loan association cases, can scarcely be regarded as anything less than the result of a *tour de force.*

There is nothing in the petition indicating that the plaintiff ever exercised any corporate privilege in this state beyond recording its mortgage and bringing suit to foreclose it. There is, therefore, no ground for holding that the plaintiff has undertaken to make the state of Kansas a field of operation for the purpose of securing to itself advantages not conferred upon our own citizens by our laws. The defendants do not argue that the plan of the association itself is such as to place it outside the protection of the laws of this state, nor is there anything in the petition to show that any of the terms of the contract were inserted as a mere subterfuge to enable the plaintiff to evade the laws of this state. The presumptions are all in favor of the legality of the contract and of the good faith of the parties.

Upon this subject the remarks of the supreme court of Pennsylvania in the case of *Bennett, Appellant, v. Building & Loan Assn., supra,* are pertinent:

"Nor is there the slightest ground for an allegation that the contract was made for the purpose of evading the usury laws of Pennsylvania. Who had such a purpose and what is the evidence of it? Did the plaintiff have it, and if so, did he communicate it to the defendant? If so, where is the evidence of it? There is none whatever. The defendant's business was transacted at its proper place of business in the state of New York. This business was a part of its regular business done in its usual way, and as a matter of course the mere fact that this loan was made to a citizen of Pennsylvania cannot justify an inference that it was done with an intent to evade the laws of Pennsylvania. This business was done just as all its other business was done. The defendant had a lawful right to loan money wherever it pleased, and it would be

most absurd to say that because it lent money to a Pennsylvanian it therefore intended to evade the laws of Pennsylvania. The Pennsylvanian had a right to borrow money in the state of New York if he chose to do so, and if he contracted to pay it in the state of New York he must be conclusively presumed to know that his contract would be governed by the law of that state. In all this there is not a shadow of an unlawful intent to evade the law of Pennsylvania." (Page 238.)

It may be that this transaction in fact involved a flagrant scheme concocted by the plaintiff to circumvent the interest laws of this state; that certain provisions of the contract were cunningly inserted for that purpose; and that the defendants were deceived or imposed upon concerning them in such a manner that a court of equity may unmask the fraud. In the investigation of such a question the courts will not halt and parley over words, but will urge their way directly to matters of substance, and will finally render such a judgment as will do justice and vindicate the law; but no such vicious purpose is disclosed by the petition in this case, and if a fraud upon the law has been committed the facts must be pleaded and proved.

The judgment of the district court is reversed, with direction to overrule the demurrer to the petition.

All the Justices concurring.