OLIVER L. STEINMAN V. THE MIDLAND SAVINGS AND LOAN COMPANY.

No. 15,618.  (96 Pac. 860.)

SYLLABUS BY THE COURT.

1. CONTRACTS—*Conflict of Laws—Stipulation as to Proper Law of the Contract.* The decision in *Loan Co. v. Solomon,* 71 Kan. 185, 79 Pac. 1077, relating to stipulations of parties that payments provided for in an obligation shall be made in, and be governed by, the laws of another state, followed.

2. BUILDING AND LOAN ASSOCIATIONS—*Foreign—Enforcement of Contracts.* A foreign building and loan association may lawfully make and enforce the payment of a loan made to a member in this state upon a pledge of stock which it had issued to him before the act of 1898 took effect (Laws 1898, ch. 10), although the association failed to comply with the terms of that law and ceased to do business in this state when it took effect, such loan being made in pursuance of a stipulation in the certificate held by the member for such stock.

Error from Allen district court; TRAVIS MORSE, judge *pro tem.* Opinion filed July 3, 1908. Affirmed.

*Charles H. Apt,* for plaintiff in error; *McClain & Apt,* of counsel.

*Campbell & Goshorn,* and *A. J. Bryant,* for defendant in error.

The opinion of the court was delivered by

BENSON, J.: The Midland Savings and Loan Company, a Colorado building and loan association, issued to Oliver L. Steinman a certificate for twenty shares of its capital stock, for which he agreed to pay in monthly payments of $5.80 each for 144 months, or until the shares should be of the par value of $100 each. Four months afterward Steinman applied for a loan of $700 as a member of the association, upon a pledge of the stock and upon a mortgage of real estate. The application was delivered to the agent of the association at Iola, by whom it was forwarded to its office in Denver, Colo., and there approved. The money was transmitted to another agent at Iola, and there paid over to Steinman upon delivery to the agent at that place, for the company, of the mortgage and certificate of stock as such security.

The bond contained the provisions peculiar to such transactions, and stipulations for monthly payments of $5.80 on stock, $4.38 interest, and $4.37 premium, amounting to $14.55 per month, and also provided that in case of default the stock should be forfeited and the withdrawal value applied upon the loan. The bond also contained the following clause:

"This bond is delivered, and its conditions are to be performed, within the state of Colorado, and it shall in all respects be governed and entitled to the benefits of the laws of said state, and its payment is secured by the assignment of the aforementioned shares of stock, as collateral security; also by deed of trust . . . executed and delivered by the said Oliver L. Steinman and Sallie Steinman to N. Q. Tanquary . . . , as trustee."

A clause to the same effect appears in the mortgage. The bond also provided that the charter and by-laws of the company should be part of the obligation. The by-laws contain the following:

"The laws of the state of Colorado, the articles of

incorporation of this company, the by-laws, the appli-cations for stock or loans, and the certificate therefor, shall be and constitute the contract between the cor-poration and its several stockholders and between the shareholders and each other. . . . All contracts, trust deeds and mortgages must be construed as hav-ing been made in Denver, Colo."

A statute of Colorado relating to building and loan associations provides:

"Any association . . . shall . . . be authorized and empowered to levy, assess, and collect from its members such sums of money, by rates of stated dues, fines, interest on loans advanced, and premiums . . . as the corporation may provide for in its constitution or by-laws.

"Such [associations] . . . may charge, contract for and recover a premium upon such a plan as may be provided for in the by-laws, or note, or other evi-dence of indebtedness taken by such association, all of which notes shall be in form non-negotiable.

"No premiums, fines, or interest on such premium that may accrue to the said association, according to the provisions of this act, shall be deemed usurious; and the same may be collected as debts of like amount are now by law collected in this state; but no fees for non-payment of dues shall exceed five per cent. per month for the first sixty days and two per cent. per month thereafter." (Laws of Colo. 1897, ch. 33, §§ 1, 6, 7.)

Steinman made twenty-four payments of interest and premium, of $4.38 and $4.37 each, respectively, down to April 3, 1901, and twenty-three payments on stock, of $5.80 each, amounting to $343. A tender of $349.20 was made and refused. The withdrawal value of the shares was then $108.20.

On February 12, 1904, the association commenced this suit of foreclosure upon the bond and mortgage. The trial was by jury. The plaintiff demurred to the defendant's evidence, which demurrer was sustained, and judgment rendered for the plaintiff for $1040.58. The only controversy is over the amount due, and this

31—78 KAN.

issue defendant insists should have been submitted to a jury.

The amounts and dates of payments and the withdrawal value of the stock were admitted. The laws of Colorado and the by-laws of the company, above referred to, and the tender, were undisputed. The defendant claimed that the premiums and all payments made in excess of the lawful rate of interest in Kansas should be credited on the principal. This presented a question of law only, which the court was required to determine, either upon the demurrer to evidence or by an instruction. And if the amount for which judgment was rendered was no more than the amount due upon the undisputed facts, the defendant has no cause of complaint.

The case is substantially the same as *Loan Co. v. Solomon*, 71 Kan. 185; 79 Pac. 1077. There the question was presented upon the pleadings; here it arose upon the trial. It was there held that the courts of this state should not refuse to enforce the collection of sums due upon a lawful bond solvable by the laws of a foreign state, and not given in evasion of the usury laws of this state, merely because if construed by the laws of this state the rate of interest would be higher than that allowed by the laws here. This settles the principal contention against the defendant, the same stipulations appearing in the instruments here as in that case.

It is also urged that as there was no competitive bidding for the loan there could be no premium in fact, and that the provision therefor was an evasion of the usury laws; but the statute of Colorado, in connection with the by-laws, which were a part of the contract, provides for such premiums, and in following the rule in the Solomon case we must hold the party bound by its terms. If our citizens choose to apply for loans to corporations in other states, no fraudulent scheme or evasion being pleaded or proved, they must abide by

their agreement that the laws of that state shall govern in such matters.

The fact that the securities were delivered to an agent of the plaintiff in this state and that for convenience the monthly payments were made here, although the bond provided that they should be made in Colorado, does not prevent the application of the rule announced in the Solomon case. It was not alleged that the transaction involved a scheme devised to circumvent the usury laws, with stipulations in the contract fraudulently designed to accomplish that purpose, or that the defendant was deceived or imposed upon concerning them. Nor were fraudulent practices charged. The issues were upon the interpretation and effect of the contract and the application of the payments, and appear to have been properly decided.

Another question is presented: It is alleged that the plaintiff was doing business in this state in violation of our law, not having complied with its provisions relating to foreign corporations. The subscription for stock was made before the act of 1898 took effect. (Laws 1898, ch. 10.) Being the owner of stock Steinman was entitled, as stipulated in the certificate, to a loan when he made application and offered sufficient security. The association ceased to do business in this state when that law went into effect—January 11, 1899, but it could not refuse to carry out its contracts previously made. (*Bedford v. Eastern Building and Loan Assn.*, 181 U. S. 227, 21 Sup. Ct. 597, 45 L. Ed. 834; *The State v. Book Co.*, 69 Kan. 1, 76 Pac. 411, 1 L. R. A., n. s., 1041; *Boggs v. Kelly,* 76 Kan. 9, 90 Pac. 765.)

The judgment is affirmed.