MIDLAND SAVINGS & LOAN CO. v. HENDER-
SON *et al.*

No. 3980.   Opinion Filed July 13, 1915.

(150 Pac. 868.)

1. **BUILDING AND LOAN ASSOCIATIONS—Powers—Loan of
Money—Premium.** A building and loan association incorporated
within the state of Colorado under the laws of that state may
loan its accumulations to members, upon such plan of repayment
as may be provided for in its by-laws, and may charge, contract
for, and recover a premium upon such plan as may be provided
for in the by-laws or note or other evidence of indebtedness taken
by such association, all of which notes shall be in form nonnego-
tiable.   Section 6, p. 125, Laws Colo. 1897.

2. **SAME—Competitive Bidding.** According to the by-laws of the
plaintiff in error association, adopted pursuant to the statute, in
addition to interest at the rate of 7½ per cent. per annum, such

premium could be charged as provided for in the note, bond, or other evidence of indebtedness taken by the company, provided the premium so charged should not exceed 62½ cents per month on each $100 borrowed. **Held,** when the premium fixed in the note was less than that authorized in the by-laws, the same was a proper item of charge for money loaned. **Held,** further, that under section 6, p. 125, Laws Colo. 1897, building and loan associations organized within that state and under its laws may loan its accumulations, when the by-laws of the association so provide, without the necessity of competitive bidding.

3. **CONTRACTS—Power of Contracting Parties—Stipulation as to Law Governing.** As a general rule, it is within the power of the contracting parties, by the express terms of their contract or undertaking, to establish the place according to the laws of which the validity and construction of the contract shall be determined.

4. **BUILDING AND LOAN ASSOCIATIONS—Loans—Usury—What Law Governs.** A first mortgage bond and real estate mortgage given by a resident of the Indian Territory in September, 1907, upon land located in said territory, to a foreign building and loan association, solvable according to the laws of Colorado, is uninfluenced by section 1523, Comp. Laws, 1909 (section 1326, Rev. Laws 1910), providing that foreign building and loan associations shall not charge a rate of interest, or interest and premiums, in excess of 1 per cent. per month upon the amount loaned, and making any charge over and above said rate usurious.

(Syllabus by the Court.)

*Error from District Court, Pittsburg County;*
*Preslie B. Cole, Judge.*

Action by the Midland Savings & Loan Company against Daniel W. Beats and others, copartners doing business as the Cochran Grocery & Produce Company. Judgment for plaintiff, for less than the amount claimed, and it brings error. Reversed and remanded.

*Robert N. McMillen, A. J. Bryant, Stuart, Cruce & Cruce,* and *Ames, Chambers, Lowe & Richardson,* for plaintiff in error.

*Wilkinson & Keith,* for defendants in error.

SHARP, J. On September 3, 1907, at Kiowa, Ind. T., the defendant in error Daniel W. Beats gave the plaintiff in error, the Midland Savings & Loan Company, of Denver, Colo., his first mortgage bond or note in the principal

sum of $500, and as part security therefor on said day executed a real estate mortgage on lot numbered 4 in block numbered 63 in the town of Kiowa. According to the terms of said bond, the maker thereof obligated himself to pay or cause to be paid to the said company, at its office in the city of Denver, the sum of $13.25 monthly, on or before the last day of each month, of which sum $8.25 was a monthly installment due upon 15 shares of the capital stock of said company, the sum of $3.13 monthly interest due upon said principal sum, and the further sum of $1.87 as monthly premium upon said principal sum, and in addition thereto such fines as should accrue upon said stock, interest, and premium, according to the by-laws of the company; payment to be made until said principal sum should be paid in full as therein provided for. Default in the payment having been made, the company on the 9th day of February, 1911, instituted its action in the district court of Pittsburg county to recover of the maker of said bond the alleged balance due, and to foreclose the mortgage in satisfaction thereof. The defendants, other than Daniel W. Beats, it was claimed, asserted some interest or lien upon the real estate described, which was junior and inferior to the lien of the plaintiff, and for the purpose of determining and foreclosing such interest said defendants were made parties.

Trial being had, special findings of fact were made and returned by the trial court, and judgment entered for plaintiff in the sum of $196.25; the court also decreeing the sale of the real estate in settlement of the judgment. Among other things, the court found that plaintiff was a building and loan association, incorporated and organized under the laws of the state of Colorado, with its principal office at Denver, Colo., and that said association sold stock and loaned money to its subscribers only; that the 15 shares of stock sold said Beats were assigned to the company as collateral security for the loan made by it; that

the contract entered into between said parties by its terms was to be governed by and construed according to the laws of the state of Colorado; that the by-laws introduced in evidence by plaintiff were in force at the time of the execution of the various instruments affecting said loan; and, further, that under the laws of the state of Colorado, in force at the time, the plaintiff was required to submit its loan to competitive bids of its stockholders, which fact the court found plaintiff had failed to prove, and that therefore:

"The loan became and was a straight loan of money from the plaintiff to the defendant, and that the defendant was not bound under the by-laws and laws of the state of Colorado to all the penalties, forfeitures, and payments of stock, as is provided for in their by-laws."

Thereafter, and within the time allowed by law, plaintiff filed its motion for a new trial, including therein, among other grounds:

"Error in the assessment of the amount of recovery, the same being too small."

The one contention urged in this court in the supplemental brief of the plaintiff in error is that under the laws of the state of Colorado a fixed premium may be agreed upon by the parties to the loan without the necessity of competitive bidding. Plaintiff both pleaded and proved various provisions of the statutes of Colorado, sections, 1, 3, 6, 7, pp. 121, 122, 125, Sess. Acts 1897. Section 1 in part reads as follows:

"Any association of not less than three persons hereafter incorporated under the laws of this state, which shall be organized within this state for the purpose of raising a fund by the collection of dues or stated payments from its members, to be loaned among its members, shall, in furtherance of such purpose, and after having complied with the requirements of this act, be authorized and empowered to levy, assess, and collect from its members such sums of money, by rates of stated dues, fines, interest on loans advanced, and premiums bid by members for the

right of precedence in taking loans, as the corporation may provide for in its constitution or by-laws."

By sections 6 and 7 it was provided:

"Sec. 6.   Every such corporation organized under the laws of the state of Colorado may loan its accumulations to members upon such plan of repayment as provided by its by-laws.   They may charge, contract for and recover a premium upon such a plan as may be provided for in the by-laws, or note, or other evidence of indebtedness taken by such association, all of which notes shall be in form non-negotiable.

"Sec. 7.   No premiums, fines, or interest on such premium that may accrue to the said association, according to the provisions of this act, shall be deemed usurious; and the same may be collected as debts of like amount are now by law collected in this state; but no fees for nonpayment of dues shall exceed five per cent. per month for the first sixty days, and two per cent. per month thereafter."

In section 28 of the by-laws of the company it was provided:

"All loans shall bear interest at .the rate of 7½ per cent. per annum, and such premium as may be provided for in note, bond or other evidence of indebtedness taken by the company, all of which shall be in form non-negotiable:   Provided, that such premium shall not exceed 62½ cents per month on each $100 borrowed.   Interest and premium shall be due and payable monthly, at the home office of the company on or before the 1st day of each month from time loan is closed until fully paid."

It will be noted that the premium called for is designated by reference to the bond or other evidence of indebtedness.   The bond signed by Beats and accepted by the company provided, as we have already seen, for the payment of the sum of $13.25 monthly, on or before the last day of each month, of which sum $8.25 constituted the monthly installment due upon 15 shares of stock issued to said Beats, and the sum of $3.13 monthly interest due upon said principal sum or loan, and also such fines as might accrue upon such stock, interest, and premium according to the by-laws of the company, until the principal

sum was paid in full, by said shares of capital stock having reached their par value, or until otherwise paid as therein provided, when the obligation should become void. By section 7 of the act it was provided that no premiums, fines, or interest on such premiums that might accrue to the association, according to the provisions of the act, should be deemed usurious, and that the same might be collected as debts were at the time by law collected in the state of Colorado.

In holding that, under the Colorado statute, plaintiff was required to submit its loans to competitive bids of its stockholders, it is clear the court erred. Whatever may be the authority given the company under section 1 of the statute, it is not necessary to determine. We are concerned only with section 6, under which, admittedly, the loan was made. This section authorized the loan of the company's accumulations to members upon such plan of repayment as provided for by its by-laws, and stipulated that the company could charge, contract for, and recover a premium upon such plan as might be provided for in its by-laws, or note, or other evidence of indebtedness taken by such association. With reference to the premium, the by-law enacted under authority of the statute provided that in addition to the interest, fixed at 7½ per cent. per annum, such premium could be charged in the note, bond, or other evidence of indebtedness as therein provided for, conditioned only that the same should not exceed 62½ cents per month on each $100 borrowed. The premium fixed in the bond was $1.87, payable monthly, or less than that authorized in the by-law. The loan being made under authority of section 6 of the statute, and of the by-laws of the association, and the bond providing for the payment of a fixed monthly premium, there was no warrant of law for the trial court holding it was necessary that plaintiff establish the fact that it had submitted the

loan to a competitive bidding; otherwise, that it could not recover such sums as authorized in the by-laws.

The claim here made was urged in *Steinman v. Midland Savings & Loan Co.,* 78 Kan. 479, 96 Pac. 860, where the same provisions of the Colorado statutes were before the court. Answering the contention, the court said:

"It is also urged that as there was no competitive bidding for the loan, there could be no premium in fact, and that the provision therefor was an evasion of the usury laws; but the statute of Colorado, in connection with the by-laws, which were a part of the contract, provides for such premiums, and in following the rule in the Solomon Case, we must hold the party bound by its terms."

In *Boleman v. Citizens' Loan & Bldg. Ass'n,* 114 Wis. 217, 90 N. W. 199, referring to the statutes of Wisconsin on the subject of loans of this character, the Supreme Court of that state said:

"It is worthy of note that corporations of this kind, organized under our present statutes, are authorized to adopt fixed rates of premium and interest on loans. This was evidently done in deference to the fact that horizontal or uniform premuims, based upon a just profit to the association, have been demonstrated in actual experience as being more to the advantage of the association, and as of more fairness to the members desiring loans, than the other plan."

A statute similar in its meaning came under review by the Supreme Court of Indiana in *International Bldg. & L. Ass'n v. Wall et al.,* 153 Ind. 554, 55 N. E. 431. Referring to this statute, which in section 9 thereof provides:

"It shall be competent and lawful for the borrower from such association to agree, in writing, upon a given rate of premium in addition to the interest to be paid upon each loan, without bidding. All contracts heretofore made between any borrower and any such association for the payment of any premiums, with or without any bidding are hereby legalized" (Laws Ind. 1897, p. 287)

—the court held that whether or not, prior to the taking

effect of the act, an agreement for premium by rate, instead of in gross, was authorized by statute, was a question unnecessary to decide; however, no new rights having intervened, that the Legislature might ratify acts it might have authorized; and it was further said that, as the Legislature had power to authorize building and loan corporations to take premiums, it could permit its corporate creatures to exercise that power in any mode it saw fit.

By statute, in Illinois, a building and loan association may by its by-laws dispense with the offering of its money in open meeting, and in lieu thereof loan its money at a rate of interest and premium fixed by its by-laws, and either with or without premium, deciding the preference or priority of loans by priority of applications for loans of its stockholders. *Collins v. Cobe,* 202 Ill. 469, 66 N. E. 1079.

In *Beckley v. U. S. Sav. Loan Ass'n,* 147 Ala. 195, 40 South. 655, the contention was made that the contract was usurious, and that the premium should be added to and included as a part of the interest. There, as in section 7 of the Colorado statute, it was expressly provided that premiums should not render the contract usurious. Referring to the manner of making the loan, it was held that, because the money was not put up to the highest bidder, the mortgage was not thereby invalid or the loan usurious —citing, in support of its conclusion, *Zenith B. & L. Ass'n v. Heimbach,* 77 Minn. 97, 79 N. W. 609.

In 1895 a somewhat similar statute was adopted in the state of Missouri, which was before the Court of Appeals in *Cover et vir v. Merc. Mut. B. & L. Ass'n,* 93 Mo. App. 302. In sustaining the company's right to recover a fixed premium, the court said:

"Defendant association, after the enactment of the statute of 1895, adopted a by-law authorizing the loan of its funds at a premium of 60 cents per share monthly. The loans in controversy, as we have just seen, were made

at a premium of 40 cents per share, and, being thus less than that authorized by the by-laws, no complaint can be heard from the borrower that the by-law was not complied with. We therefore hold that defendant's demanding and exacting of plaintiffs a fixed premium, without competitive bids, was authorized by the statute aforesaid."

After reviewing the early statutes and decisions of the courts of that state, and referring to the change in the statute brought about by the passage of the act of May 1, 1891 (88 Ohio Laws, p. 469), which omitted the former condition of competitive bidding as to the premium paid, and in criticizing the practice prevalent under the earlier statutes, it is said in *Cramer v. Southern Ohio Loan & Trust Co.*, 72 Ohio St. 395, 74 N. E. 200, 69 L. R. A. 415, 2 Ann. Cas. 990:

"The Legislature, we must assume, had a reasonable motive for this material change, for before that time this court, in the cases cited under the former law, held that, if the premium was not bid for precedence in obtaining the loan, it was usurious in case it and the interest exceeded the legal rate to be charged under the interest laws. We think a reason for the change in the statute may be readily found. Experience with competitive bidding did not tend to fairness and equality among the members. The amounts of premiums bidden at different times and by different borrowers were not uniform. At one time competition was stronger than at another, thus increasing the sum to be paid. There was opportunity at least for fictitious competition to run the premium up; and, whatever the premium, high or low, the dividends were the same to all. The member who paid the high rate of premium received no greater dividend than the one who paid the lowest. There was no certain standard, and the rights of the members thus varied with the seasons, or the financial stress in which the borrower might be found. The old law defeated the principle of mutuality, which is the basic principle of such associations. Now all borrowers are treated as upon a common level, and the premium is uniform, and all fare alike in that respect, and, of course, share alike in the dividends to be credited. Therefore the present law is not vicious, as declared by one of our cir-

cuit courts, but, on the contrary, it is fair and is sanctioned by the rule of mutuality."

In *Manship v. New South B. & L. Ass'n* (C. C.) 110 Fed. 845, referring to the subject of loans by building associations, and after reviewing a number of the authorities, the opinion in part reads:

"In my judgment, when there is no legislative prohibition, such as is found in Ohio, premiums may be fixed by contract, just as interest may be fixed thereby, and it seems to me certain that, in view of the present extent of building and loan association interests in the United States, fixed premiums are better calculated to put all the members of such associations on an equal footing than premiums fixed by open bidding, where the amount of same would not be fixed upon any business basis, but would only be determined by the financial exigencies and necessities of those who might be bidding for the particular sum of money offered."

To the same effect is the decision in *Gale v. Southern B. & L. Ass'n* (C. C.) 117 Fed. 732, where, after citing the Alabama statute, and the decisions of the Supreme Court of that state *(Sheldon v. Birmingham B. & L. Ass'n,* 121 Ala. 278, 25 South. 820, and other local decisions), the court holds that building and loan associations, under the statute, have the right, if their by-laws so provide, to lend on a fixed premium, which, together with the interest charged *eo nomine,* exceeds the interest rate allowed to be charged by other lenders. Other cases bearing upon and supporting the rule announced are *Borrowers' & Investors' Bldg. Ass'n v. Eklund,* 190 Ill. 257, 60 N. E. 521, 52 L. R. A. 637; *Co-operative Sav. & L. Ass'n v. Fawick,* 11 S. D. 589, 79 N. W. 847; *New Jersey B., L. & I. Co. v. Bachelor,* 54 N. J. Eq. 600, 35 Atl. 745; *Beyer v. Nat. B. & L. Ass'n,* 131 Ala. 369, 31 South. 113.

It is true that some courts condemn the practice of charging fixed premiums, on the theory that it is a gross perversion of the whole spirit and design of the building and loan association scheme; and we may add that, since

these institutions are liable to abuse, they must be guarded carefully to prevent them from being used as mere contrivances by which money lenders may evade the usury laws. It was never intended originally to have classes among shareholders—one class being lenders exclusively, and the others borrowers only; one furnishing the money to be loaned for as high a premium as could be secured, and the other borrowing at such rates as his necessities forced him to submit to. There is, however, nothing in the record before us to authorize a finding that the plan by which the company transacted its business in the Indian Territory was to circumvent and avoid the law relating to usury.

Nor is there anything in *Ætna B. & L. Ass'n v. Rouch et al.*, 32 Okla. 735, 124 Pac. 24, in conflict with our present views. It appears from that case, under the laws of Kansas, as well as the laws of Oklahoma, at the time in force, it was required as a condition precedent to the charging and collecting of a premium that the loan should be bid by the stockholder making application therefor, which was not done, but that, on the other hand, the company without right arbitrarily charged the premium as a part of the loan contract. The present case not being affected by the former statutes in this state, the opinion is not controlling.

Many of the states have statutes not unlike that of Colorado, and we know of no decision in which the validity of such statute, where called in question, has not been upheld and given effect. Section 17, art. 17, c. 17, Stats. 1893 (section 1503, Comp. Laws 1909), authorized loans to be made by building and loan associations by competitive bidding. This statute was amended in 1913 (chapter 200, sec. 4, p. 446, Sess. Laws 1913), by providing that any building and loan association may by its by-laws dispense with the offering of its moneys for bid, and in lieu thereof loan or advance its moneys to members at such

rate of interest, or interest and premium, as may be provided for by the by-laws, and the amendment provides, further, that such premium to be paid in installments shall not be deemed usurious, but shall be taken to be the payment as it falls due, and the same shall be lawful in so far as the said premium, together with interest, shall not exceed 1 per cent. per month. Thus it appears that our own state has changed its laws so as to authorize, within certain limitations, fixed premiums upon loans by building and loan associations. The statutes of the different states pertaining to loans of building and loan associations may be found in an appendix to Thornton & Bleckledge on Building and Loan Associations, pp. 664-914. Indeed, counsel for defendants in error have not sought to defend the judgment upon the ground on which it was based, but instead say: (1) That the contract was an Oklahoma contract; and (2) the rate of interest, being in excess of 12 per cent., was in violation of section 1523, Comp. Laws 1909, prohibiting a foreign building and loan association to charge any rate, on account of interest and premium, in excess of 1 per cent. per month upon the amount loaned.

The court found, as already seen, that the contract by its terms was to be governed by and construed according to the laws of Colorado. In this the trial court was correct. Where not forbidden by law, a contract of a foreign building and loan association, which is not usurious under the laws of the state where the association is domiciled, and where the obligations are payable, cannot be attacked for usury in the state where the land mortgaged is situated. *Bedford et ux. v. Eastern B. & L. Ass'n,* 181 U. S. 228, 21 Sup. Ct. 597, 45 L. Ed. 834. The parties having in good faith contracted that the laws of Colorado should control, and there being no statute in force in the Indian Teritory, forbidding nonresident building and loan companies from transacting business and

making loans of the character under review, the parties must be held to a performance of their respective undertakings. *Midland Sav. & Loan Ass'n v. Solomon,* 71 Kan. 185, 79 Pac. 1077; *United States Sav. & L. Co. v. Beckley,* 137 Ala. 119, 33 South. 934, 62 L. R. A. 33, 97 Am. St. Rep. 19; *Pioneer Sav. & L. Ass'n v. Cannon,* 96 Tenn. 599, 36 S. W. 386, 33 L. R. A. 112, 54 Am. St. Rep. 858; *United States Sav. & L. Ass'n v. Shain,* 8 N. D. 136, 77 N. W. 1006; *Bennett v. Bldg. & L. Ass'n,* 177 Pa. 233, 238, 35 Atl. 684, 34 L. R. A. 595, 55 Am. St. Rep. 723; *Hieronymus v. N. Y. Nat. B. & L. Ass'n* (C. C.) 101 Fed. 12; Dicey on Conflict of Laws, p. 563, 567.

The case is unaffected by Act. Cong. February 18, 1901, c. 379, 31 Stat. 794, for that act, by its express terms, is confined to banks and trust companies authorized to do business in the Indian Territory. *Brewer et al. v. Rust,* 20 Okla. 776, 95 Pac. 233; *Taylor v. Merrell,* 22 Okla. 18, 97 Pac. 571; *Sulphur Bank & Trust Co. v. Medlock,* 25 Okla. 73, 105 Pac. 321. Neither is the case influenced by the statutes of Arkansas (section 4732, Mansf. Dig.) in force by Congressional enactment in the Indian Territory, making all contracts for a greater rate of interest than 10 per centum per annum void, both as to principal and interest, for the reason that the rate of interest paid by Beats was contingent upon the length of time required to mature the shares of stock. It was so held in *Lindsay et ux. v. Chickasha Bldg. & L. Ass'n,* 39 Okla. 12, 130 Pac. 570, and is the settled rule of decision in Arkansas. *Reeves v. Ladies' B. & L. Ass'n,* 56 Ark. 335, 19 S. W. 917; 18 L. R. A. 129; *Taylor v. Van Buren B. & L. Ass'n,* 56 Ark. 340, 19 S. W. 918; *Roberts v. Am. Bldg. & L. Ass'n,* 62 Ark. 572, 36 S. W. 1085, 33 L. R. A. 744, 54 Am. St. Rep. 309; *Black v. Tompkins,* 63 Ark. 502, 39 S. W. 553. See, also, *Spain v. Hamilton,* 1 Wall. 604, 17 L. Ed. 619.

47--23

Regardless, then, of the terms of the agreement making the contract solvable according to the laws of Colorado, we find that it inveighed against no policy of the territory where the contract was entered into. Being a valid and binding contract, it remains unaffected by any change in our form of government brought about by the admission of the state into the Union. Section 1, art. 25, Constitution.

Answering the claim that under section 1523, Comp. Laws 1909 (section 1326, Rev. Laws 1910), any rate charged by a foreign building and loan association in excess of 1 per cent. per month upon the amount loaned should be usurious and subject such company or association to the penalties for usury provided under the laws of this state, it need only be said that the statute has no application, for the reason that the transaction arose in the Indian Territory prior to statehood.

Having determined that the trial court erred in its construction of the Colorado statutes, it follows that the judgment must be reversed, and the cause remanded, with instructions to proceed further in accordance with the views herein expressed.

All the Justices concur.