No. 25,276.

J. H. ELLIS and CAP BAKER, *Appellees*, v. THE EAGLE-PICHER LEAD COMPANY, *Appellant.*

### SYLLABUS BY THE COURT.

1. SALE OF PERSONAL PROPERTY—*Oral Contract—Contract Valid Where Made—Governed by the Lex Loci Contractu.* An oral contract for the sale of personal property, valid in the state where made, and not repugnant to the laws of the state where the contract was sought to be enforced, is binding on the vendee, although the contract was invalid under the statute of frauds of the state where the personal property was located and where presumably it was to be delivered by the vendor.

2. SAME—*Personal Property in Oklahoma—Valid Oral Contract of Sale Made in Kansas—Contract Invalid in Oklahoma—Contract Enforceable in Kansas.* By an oral contract, made in Kansas, plaintiff agreed to sell and defendant agreed to buy a quantity of zinc ore piled at a mine in Oklahoma, at an agreed price of $398. Defendant breached the contract and defended on the ground that such a contract, not being in writing and nothing paid on it and nothing delivered pursuant to its terms, was invalid under the Oklahoma statute of frauds. *Held,* the contract being valid in Kansas, the plaintiff may recover the purchase price in a Kansas court of competent jurisdiction.

Appeal from Cherokee district court; FRANK W. BOSS, judge. Opinion filed May 10, 1924. Affirmed.

*A. S. Wilson,* of Galena, for the appellant.
*E. B. Morgan,* of Galena, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: This was an action for the purchase price of a quantity of zinc ore. The contract was made in Kansas and did not violate any provisions of Kansas law, but it concerned property in Oklahoma and if governed by Oklahoma law it was illegal under the statute of frauds of that state.

The cause was tried on the pleadings and on an agreed statement of facts, and judgment was entered for plaintiff.

Defendant appeals.

The Oklahoma statute, on which defendant relies, reads:

"§ 5034. The following contracts are invalid, unless the same, or some note or memorandum thereof, be in writing and subscribed by the party to be charged, or by his agent: . . .

"Fourth. An agreement for the sale of goods, chattels, or things in action, at

Ellis and Baker v. Lead Co.

a price not less than fifty dollars, unless the buyer accept or receive part of such goods and chattels, or the evidences of some of them, of such things in action, or pay at the same time some part of the purchase money; but when a sale is made by auction, an entry by the auctioneer in his sale book, at the time of the sale, of the kind of property sold, the terms of sale, the price and the names of the purchaser and person on whose account the sale was made, is a sufficient memorandum." (2 Comp. Stat. Okla. Ann. [1921].)

It is agreed that the contract for the purchase of the zinc ore was not in writing; that the price was $398, no part of which had been paid, and that no part of the ore had been received by the purchaser. The legal question, therefore, is as stipulated by the litigants:

"If the court holds that the laws of the State of Kansas govern, then the court shall render judgment in favor of the plaintiffs for the amount claimed in their petition, with costs, and in the event the court shall hold that the laws of the State of Oklahoma govern, then the court shall render judgment in favor of the said defendant for costs."

The contract of purchase and sale was made by the parties in Kansas, and it must be presumed that their contract was intended to be governed by the *lex loci contractu*. Redress for the breach of a contract is ordinarily governed by the *lex fori*, but here the redress sought is not repugnant to the law of the forum. It is argued, however, that the contract should be governed by the law of the place where it is to be performed, but here the performance demanded is payment. The payment was not necessarily to be made in Oklahoma. Payment might be made anywhere; it was essentially an ambulatory obligation, and enforceable in a transitory action wherever service could be obtained. We have no present concern with the fact that the ore was in Oklahoma and presumably was to be delivered in Oklahoma. The plaintiff vendor of the ore made no default in the matter of delivery, nor did he seek shelter behind the Oklahoma law to excuse a breach of his obligation to deliver.

In *Barbour v. Campbell*, 101 Kan. 616, 617, 168 Pac. 879, it was said: "Ordinarily a contract which is valid where made is valid everywhere," the principal exception to such rule being—"where the contract contravenes the settled public policy of the state whose tribunal is invoked to enforce the contract, an action on that contract will not be entertained." In the present case, the action may be maintained under this rule and it is not barred by the exception.

In *Pritchard v. Norton*, 106 U. S. 124, 27 L. ed. 104, 106, cited by both parties, it was said:

"The rule deduced by Mr. Wharton in his Conflict of Laws [§ 401] as best harmonizing the authorities and effecting the most judicious result, and which was cited approvingly by Mr. Justice Hunt in *Scudder v. Bank*, 91 U. S. 411 [XXIII., 248], is that 'Obligations in respect to the mode of their solemnization are subject to the rule *locus regit actum;* in respect to their interpretation, to the *lex loci contractus;* in respect to the mode of their performance, to the law of the place of their performance. But the *lex fori* determines when and how such laws, when foreign, are to be adopted, and in all cases not specified above, supplies the applicatory law. This, it will be observed, extends the operation of the *lex fori* beyond the process and remedy, *so as to embrace the whole of that residuum which cannot be referred to other laws.* And this conclusion is obviously just, for whatever cannot, from the nature of the case, be referred to any other law, must be determined by the tribunal having jurisdiction of the litigation, according to the law of its own locality."

In *Scudder v. Union National Bank*, 91 U. S. 406, 23 L. ed. 245, the basis of the action was on Scudder's oral promise made in Chicago that he and his partners (Ames & Co., of St. Louis) would accept a bill of exchange drawn in Chicago to the order of the plaintiff bank for a shipment of pork. By the law of Illinois where the oral promise of acceptance was made, such promise was valid. By the law of Missouri where payment of the bill of exchange was to be made, such oral promise was not binding. It was held that since the *lex loci contractu* and the *lex fori* (Illinois) both gave sanction to the oral contract was enforceable, although invalid by the law of the place of performance (Missouri). The court said:

"The law of the expected place of performance, should there be a difference, yields to the *lex fori* and the *lex loci contractu.* . . . Matters bearing upon the execution, the interpretation and the validity of a contract are determined by the law of the place where the contract is made. Matters connected with its performance are regulated by the law prevailing at the place of performance. Matters respecting the remedy, such as the bringing of suits, admissibility of evidence, statutes of limitation, depend upon the law of the place where the suit is brought." (pp. 411, 412. See, also, Rose's notes to the Scudder case in 23 L. ed. addenda pp. 1104 *et seq.*)

The general run of state decisions is to the same effect. Thus by the law of Indiana' in 1905 a married woman could not make a valid contract of suretyship. By the law of Illinois such a contract was valid. In *Garrigue v. Keller*, 164 Ind. 676, 681, 69 L. R. A. 870, it was held that a married woman's contract of suretyship made in Illinois to be performed in Indiana was enforceable in Indiana. The court said:

"A contract must be construed and its validity determined under the laws

Ellis and Baker v. Lead Co.

of the state where it is executed, unless it can be fairly said that the parties at the time of its execution clearly manifested an intention that it should be governed by the laws of another state. . . . If the notes were executed in Illinois, as averred, and were valid there, the designation of a place of payment within this state will not be accepted as conclusive evidence, or as clearly manifesting an intention by the parties, that their validity should be governed by the laws of Indiana, when such an interpretation would render them wholly void as to one of the makers. This conclusion is supported by the rule of sanity and honesty 'that no contract must be held as intended to be made in violation of the law, whenever by any reasonable construction it can be made consistent with the law, and which it was competent for the parties to adopt.' "

In *Bartlett v. Collins,* 109 Wis. 477, 83 A. S. R. 928, where the plaintiff, a grain broker, and the defendant, a grain speculator, both residents of Wisconsin, made a contract in Wisconsin for a sale of grain on the Chicago board of trade, the court declared that the contract was governed by the law of Wisconsin.

The case of *Hunt v. Jones,* 12 R. I. 265, was closely analogous to the one at bar. Hunt sold Jones 200 barrels of lime at $1.60 per barrel, to be delivered in New York City. The contract of sale was oral and was entered into in Rhode Island, where such a contract was valid. The New York statute of frauds was practically identical with the Oklahoma statute set out above, and it was pleaded by Jones in defense of his breach of contract of purchase. It was held that notwithstanding the New York statute of frauds and the fact that delivery was to be made (and was made) in New York City, Hunt was entitled to recover under the *lex loci contractu* and the *lex fori.*

Some phases of this general subject were touched in *Denny v. Faulkner,* 22 Kan. 89, syl. ¶¶ 6 and 9, and the discussion in the opinion so far as relevant is in accord with the views outlined herein. Other cases in our own jurisdiction which incidentally touch on the subject were: *Briggs v. Latham,* 36 Kan. 255, 13 Pac. 393; *Loan Co. v. Solomon,* 71 Kan. 185, 79 Pac. 1077; *Steinman v. Loan Co.,* 78 Kan. 479, 96 Pac. 860. (See, also, Dicey on Conflict of Laws, with notes on American Cases by John Bassett Moore, [1896] 569 *et seq.;* Story on Conflict of Laws (Redfield's ed., 345 *et seq.;* 2 Wharton on the Conflict of Laws, 3d ed., 892 *et seq.;* 12 C. J. 448, 351; 5 R. C. L. 931 *et seq.;* 25 *id.* 695.)

The judgment is affirmed.