(685 P.2d 321)
No. 56,072

NELCINE SIMMS, *Plaintiff,* v. METROPOLITAN LIFE INSURANCE COMPANY, *Defendant-Appellant,* and FAIRFAX INSTITUTE FOR SOBRIETY, INC., *Intervenor-Appellee.*

Opinion filed August 2, 1984.

*Nancy Mayer,* and *William J. Toppeta,* of New York, New York, and *Jeanne Gorman Rau,* and *Frank D. Menghini,* of McAnany, Van Cleave & Phillips, P.A., of Kansas City, for the appellant.

*Robert D. Loughbom,* of Kansas City, for the intervenor-appellee.

Before FOTH, C.J., PARKS and SWINEHART, JJ.

FOTH, C.J.: Metropolitan Life Insurance Company appeals from a summary judgment holding it liable under a group health insurance policy for the treatment of one of its insureds in a

Kansas alcohol and drug treatment facility. It relies on the fact that its policy covers only treatment in a "legally constituted hospital." The trial court imposed liability by reading into the policy the terms of K.S.A. 40-2,105, which arguably mandates broader coverage. Metropolitan contends this was error for a number of reasons, but primarily because the Kansas statute is inapplicable to a policy issued and delivered outside the state.

In 1949 plaintiff Nelcine Simms went to work in Kansas for the Church of God, which has its headquarters in Tennessee. On January 1, 1965, the Church purchased a group health insurance policy from Metropolitan, which does business in both Tennessee and Kansas. The policy was delivered in Tennessee, along with certificates of coverage to be distributed by the Church to its eligible employees, including plaintiff. On September 1, 1977, the original policy was replaced by a new policy, which was declared to be "in substitution for and in continuation of" the 1965 policy, and which bore the same number. The new policy was likewise delivered in Tennessee, as were all amendments, riders, and certificates relating to both policies.

Beginning June 25, 1981, plaintiff's dependent son received 44 days of care at the Fairfax Institute For Sobriety. It is undisputed that he was an insured under Metropolitan's policy. Fairfax is not licensed as a hospital, but is licensed by the Department of Social and Rehabilitation Services for the treatment of alcohol and drug abuse. Total charges of Fairfax amounted to $5500.00. Metropolitan paid $2182.40 of that amount under its major medical coverage, being 80% of therapy, medical supplies, and drugs for the 44 days. It declined to pay room and board charges because Fairfax is not a hospital and the policy's hospitalization coverage is limited to confinement in a "legally constituted hospital."

When plaintiff brought this action to recover the balance claimed to be due under the policy, Fairfax intervened alleging that any benefits under the policy were due directly to it. Plaintiff settled her suit, leaving Fairfax to assert her claim under the policy. On cross motions for summary judgment the court found that under Kansas law Metropolitan's policy was required to furnish 30 days of coverage in a facility like Fairfax's. It accordingly rendered judgment for Fairfax and against Metropolitan for $1567.60.

In our opinion it was erroneous to apply K.S.A. 40-2,105 to this policy. That statute was enacted in 1977. When Metropolitan's policy was reissued it read:

"Every insurer, which issues any group policy of accident and sickness, medical or hospital expense insurance which provides for reimbursement or indemnity for services rendered to a person covered by such policy in a medical care facility, must make available by affirmative offer and, if requested by the contract holder, provide reimbursement or indemnity under such policy which shall be limited to not less than thirty (30) days per year when such person is confined in either a licensed hospital for the treatment of alcoholism or a facility licensed under the provisions of K.S.A. 1976 Supp. 65-4014 for the treatment of alcoholism." L. 1977, ch. 161, § 1.

As may be seen, what was required was that the insurer offer coverage and provide it on request. We are not concerned with whether such an offer or request was made, nor what the effect would be if the offer was not made. The record is silent, but to our mind the questions are irrelevant. Although the statute does not state its intended geographic reach, we cannot conceive that the legislature intended to attempt to regulate insurance contracts made outside this state.

In *Fagan v. John Hancock Mutual Life Insurance Company*, 200 F. Supp. 142 (D. Kan. 1961), Judge Stanley observed:

"It has long been the law of Kansas that the *lex loci contractus* governs the construction of contracts. *Hefferlin v. Sinsinderfer*, 2 Kan. 401 (1864). Thus Kansas sends us to the place where the contract was made, but offers no further guidance as to where that place is under the peculiar circumstances surrounding issuance and delivery of a group insurance contract."

See also *Ellis and Baker v. Lead Co.*, 116 Kan. 144, 225 Pac. 1072 (1924); *Denny v. Faulkner*, 22 Kan. 89, Syl. ¶ 6 (1879). Perhaps because the *lex loci contractus* principle is of such ancient vintage as to be commonly accepted, we do not find the issue treated in modern cases. Nevertheless, it appears that under Kansas law the choice of which state's law is applicable to the construction of a contract depends on where the contract is made. In the case of an insurance contract, its "construction" includes a determination of whether statutorily mandated provisions are to be read into the policy.

Where a contract is "made" is a settled proposition in our case law:

"A contract is made at the time when the last act necessary for its formation is

done, and at the place where that final act is done." *Smith v. McBride & Dehmer Construction Co.*, 216 Kan. 76, Syl. ¶ 1, 530 P.2d 1222 (1975).

See also *Neumer v. Yellow Freight System, Inc.*, 220 Kan. 607, Syl. ¶ 2, 556 P.2d 202 (1967); and cases cited in *Smith v. McBride*, 216 Kan. at 79.

The question then becomes, when and where was plaintiff's insurance coverage effectuated? Was it when the master policy and certificates were delivered to the Church of God in Tennessee, or when her individual certificate was delivered to her by the Church in Kansas?

Although our courts have never addressed the issue directly, in *Kolich v. Travelers Ins. Co.*, 154 Kan. 458, 463, 119 P.2d 498 (1941), our Supreme Court quoted with apparent approval the following language from the leading case of *Boseman v. Insurance Co.*, 301 U.S. 196, 203, 57 S.Ct. 686, 81 L.Ed. 1036 (1937):

"But the certificate is not a part of the contract of, or necessary to, the insurance. It is not included among the documents declared 'to constitute the entire contract of insurance.' Petitioner was insured on the taking effect of the policy long before the issue of the certificate. It did not affect any of the terms of the policy. It was issued to the end that the insured employee should have the insurer's statement of specified facts in respect of protection to which he had become entitled under the policy. It served merely as evidence of the insurance of the employee. Petitioner's rights and respondent's liability would have been the same if the policy had not provided for issue of the certificate. And plainly delivery of the certificate by the refining company to petitioner in Texas has no bearing upon the question whether Pennsylvania law or Texas law governs in respect of the notice of claim."

In *Boseman* the group policy had been delivered to the employer in Pennsylvania, and the certificate had been delivered by the employer to the employee in Texas. The court held inapplicable a Texas statute governing the time for filing claims which would have invalidated a policy provision if the policy had been delivered in Texas. While the court relied on the fact that the insurer there did no business in Texas, the reliance was largely in support of its conclusion that the employer acted for itself and as agent of its employees when it procured the insurance, accepted individual applications, delivered certificates, and paid premiums. It concluded that applying the law of the state where the master policy was delivered furthered "the purpose of the parties to the contract that everywhere it shall have the same meaning and give the same protection and that

inequalities and confusion liable to result from applications of diverse state laws shall be avoided." 301 U.S. at 206.

Although *Boseman* was decided before *Erie,* and was thus an expression of the "federal common law," many courts have followed its reasoning that a group insurance contract is embodied in the master policy and that individual certificates are merely evidence of coverage. See *e.g., Lindstrom v. Aetna Life Insurance Company,* 203 N.W.2d 623 (Iowa 1973); *State Mutual Life Assurance Company v. State,* 345 S.W.2d 325 (Tex. Civ. App. 1961); and *Germain v. Aetna Life Ins. Co.,* 285 Mich. 318, 280 N.W. 773 (1938). Others have arrived at the same result independently. *E.g., Transport Life Insurance Company v. Karr,* 491 S.W.2d 446 (Tex. Civ. App. 1973); *Equitable Life Assur. Soc. of U.S. v. Austin,* 255 Ky. 23, 72 S.W.2d 716 (1934); *Blue Cross v. Ayotte,* 35 App. Div. 2d 258, 315 N.Y.S.2d 998 (1970); *Brown v. Equitable Life Assur. Soc.,* 143 S.W.2d 343 (Mo. App. 1940). As one court has observed of a group policy which automatically covered all employees:

"Thus this group policy defines what shall constitute the entire contract. It wholly omits the individual certificate to the employee as a part of the contract. While it is contemplated the employee shall have such certificate as evidence of his inclusion in the coverage of the group insurance, *the certificate is issued to the employer, and the rights of the employee would not be affected, if it never reaches him.* This is the logical construction of the contract, and the construction given like contracts in other jurisdictions. [Citations omitted.]" Emphasis supplied. *All States Life Ins. Co. v. Tillman,* 226 Ala. 245, 248, 146 So. 393 (1933).

See also *Lindstrom v. Aetna Life Insurance Company,* 203 N.W.2d at 628.

There are, of course, cases which hold that the certificate is part of the contract of insurance, but those appear to be cases where substantive terms contained in the certificate differ from those of the master policy. *E.g., Thieme v. Union Labor Life Ins. Co.,* 12 Ill. App. 2d 110, 138 N.E.2d 857 (1956); *John Hancock Mut. Life Ins. Co. v. Dorman,* 108 F.2d 220 (9th Cir. 1939). There is no suggestion here that plaintiff possessed a certificate giving her more coverage than Metropolitan's master policy.

As a matter of conflict of laws doctrine we find the majority rule to be that the interpretation of a group insurance contract is governed by the law of the state where the master policy is delivered. Thus, in *Pound v. Insurance Company of North America,* 439 F.2d 1059 (10th Cir. 1971), a group accident policy was delivered to an employer in New York and a certificate to an

employee in New Mexico. To an argument that the certificate constituted a separate contract consummated in New Mexico the court responded:

"It is difficult to view the issued certificate as the talisman of a second contract when in fact the certificate is not even necessary for insurance but is issued only when required by state law. Moreover, in cases where the problem has been considered, the courts have not assigned such exaggerated significance to the certificate of insurance. Instead, the vast weight of decisions unite in holding that group insurance policies should be interpreted according to the law of the jurisdiction wherein the master policy was issued and delivered." 439 F.2d at 1063.

Similarly, in *Simmons v. Continental Casualty Company*, 285 F. Supp. 997 (D. Neb. 1968), in applying Nebraska law the court said:

"The Nebraska conflicts rule is that the state where the last act of a contract is performed which is necessary to the validity of the contract is the situs of the contract and such final act can consist of the delivery of an insurance certificate. See, e.g., Young v. Order of United Commercial Travelers, 142 Neb. 566, 7 N.W.2d 81; Avondale v. Sovereign Camp, W.O.W., 134 Neb. 717, 279 N.W. 355. But in the case of a group policy, it appears that the last act is considered to be done in the state in which the negotiations for the purchase of the group policy are carried on, the policy was delivered, and the premiums were paid, even though the individual certificate may have been delivered outside the boundaries of that state. See Exstrum v. Union Cas. and Life Insurance Co., 165 Neb. 554, 86 N.W.2d 568, withdrawn on rehear., 167 Neb. 150, 91 N.W.2d 632." 285 F. Supp. at 1001.

As a final example, we note a recent case from the Supreme Court of Missouri, *Miller v. Home Ins. Co.*, 605 S.W.2d 778 (Mo. 1980). There the master policy had been issued in Missouri and the certificate in Alabama. In holding that a Missouri statute regulating available defenses (suicide) was applicable, the court first noted that "Missouri has consistently adhered to lex loci contractus analysis in determining whether to apply § 376.620 and its predecessor statutes to contracts of insurance." 605 S.W.2d at 779. It rejected an argument that Alabama law should govern because that was the state with the most significant contacts:

"With respect to group insurance policies, it is the majority rule that the law of the state where the master policy is delivered controls in choice of law questions. See Annotation: Group Insurance Conflict of Laws, 72 A.L.R.2d 695, 696. Though we decline defendant's invitation to adopt the Second Restatement's 'most significant relationship test' for such cases, it is recognized under that test, that in the absence of an effective choice of law clause in the policy, generally the

state where the employer has his principal place of business will supply the governing law to group life insurance contracts; not the law of the place where the employee is domiciled and receives the certificate. Restatement (2d), Conflict of Laws, § 192, Comment h (1971)." 605 S.W.2d at 780.

The Missouri court's reasoning also echoed the *Boseman* rationale of earlier decades by observing:

"In addition, application of Missouri law furthers uniformity in the interpretation of group accident insurance policies with accidental death benefits. Were it otherwise, the scope of protection afforded the insured and the liability of the insurer could change through the various states in which certificate holders might reside." *Miller*, 605 S.W.2d at 780.

We conclude that this group insurance policy was made in Tennessee and that the policy provisions control the extent of coverage unless they are shown to contravene Tennessee law. No such showing was made here. Since the hospitalization coverage of the policy did not include care in a non-hospital institution such as Fairfax, it was error to grant Fairfax judgment for its board and room charges. Judgment should have been for Metroplitan.

The trial court here reached its decision in heavy reliance on K.S.A. 40-2203, requiring uniform provisions to be included in any accident and sickness policy "delivered or issued for delivery to" any person in this state. That statute, however, by its terms applies only to individual accident and sickness policies, not to group policies. *Gibson v. Metropolitan Life Ins. Co.*, 213 Kan. 764, 767-8, 518 P.2d 422 (1974). Policy requirements for group policies are contained in K.S.A. 40-2209. Only subsection (B)(3) of the latter statute requires group policies to contain terms no less favorable to the individual insured than those of an individual policy, and then only with respect to specific portions of the policy. Coverage and benefits are not among the required "no less favorable" provisions. Subsection (B)(4), also relied on by the trial court, merely requires the insurer to issue a certificate *to the policyholder (i.e.,* the employer) for delivery to each individual employee, giving an informal summary of benefits and claim procedures. That requirement does not mean that a master policy issued and delivered elsewhere is a Kansas contract simply because an employee resides in this state.

As we see it, neither statute supports the decision of the trial court. K.S.A. 40-2203 does not apply to group policies, and even if it did, no policy was issued or delivered in Kansas. K.S.A.

40-2209 is not applicable to policies delivered outside of Kansas, and if it were its applicable provisions have been complied with. Further, neither statutes makes reference to K.S.A. 40-2,105, and even that statute, as previously noted, did not deal with policy contents but only required an offer of coverage to the employer.

Reversed.