NANNIE LUSK v. ASA SMITH *et al., as Executors.*

No. 14,154.    (81 Pac. 173.)

SYLLABUS BY THE COURT.

1. CONTRACTS—*Usury.* It is an essential requisite to a usurious transaction that there be a loan, either expressed or implied.

2. ——— *Presumption Overcome.* A son receiving $5000 from his mother stated to her that he could get her ten per cent. interest, and perhaps more. He deposited the amount to his credit in a bank "as agent," and withdrew it on checks signed the same way. He gave his mother a memorandum-book in which he credited her with the principal sum, adding the words "to be loaned out." *Held,* that these facts overcame any presumption of a usurious agreement which might arise from the payment of interest above the legal rate for over ten years by the son to his mother.

3. ——— *Construction.* Where an agreement to pay interest is subject to two constructions, one of which will make it usurious, and the other not, the court will adopt the latter.

Error from Crawford district court; WALTER L. SIMONS, judge. Opinion filed June 10, 1905. Reversed.

STATEMENT.

THIS was a proceeding begun originally in the probate court to establish a claim in favor of plaintiff in error against the estate of her son, Harry H. Lusk. The written demand, omitting the verification, was as follows:

"STATE OF KANSAS, LABETTE COUNTY, ss.

"To Asa Smith and C. W. Ryan, executors of the estate of Harry H. Lusk, deceased: You are hereby notified that I have a claim or demand against the estate of the said deceased, consisting of a claim of $5000, with interest thereon at the rate of ten per cent. per annum from the 3d day of November, 1902, which said claim is for money loaned to the said Harry H. Lusk on or about the 3d day of February, A. D. 1890, and that the said Harry H. Lusk paid to the undersigned interest on the said sum so borrowed up to the 3d day of November, 1902; that said sum of money is past due and unpaid; that by an agreement made and entered into by and between the parties the said Harry H. Lusk promised and agreed to pay to the undersigned interest on the amount so loaned at the rate of ten per cent. per annum from the date thereof, and more than that if it could be realized; that he did pay at the rate of twelve per cent. per annum up to the 3d day of November, 1902, leaving a sum due to the undersigned amounting to the sum of $5000, with interest at ten per cent. per annum from the 3d day of November, 1902, a copy of which is herewith presented; and that I will present the said account or demand to the probate court of Labette county, Kansas, for allowance, on the 27th day of July, 1903, at the hour of ten o'clock A. M.

"Witness my hand, this 26th day of May, 1903.

NANNIE LUSK, *Claimant.*"

An appeal was taken to the district court from the decision of the probate court. A change of venue was had to Crawford county, where the controversy was tried. The testimony of the witnesses used on both sides in the probate court was taken by a stenographer and transcribed. By stipulation the case was tried on

such written evidence. The court below made conclusions of fact, and law, as follow:

### "CONCLUSIONS OF FACT.

"(1) About February 3, 1890, the plaintiff loaned to H. H. Lusk the sum of $5000, under an agreement that he should pay as interest therefor the sum of twelve per cent. per annum, which agreement was oral and made at the time of the loan. (2) I find that H. H. Lusk paid to the plaintiff the sum of fifty dollars on the 3d day of each month thereafter, commencing March 3, 1890, as interest, the last payment being made on November 2, 1902. (3) There was no agreement as to when the $5000 borrowed should be paid, nor was any agreement made with reference to such repayment. (4) H. H. Lusk died testate in Labette county, Kansas, on the 29th day of November, 1902. (5) The defendants are the executors of the will of H. H. Lusk. (6) There is now due and unpaid the plaintiff on the claim sued on herein the sum of $670."

### "CONCLUSIONS OF LAW.

"(1) Said several payments were made by way of usurious interest upon said sum loaned; (2) that interest should be computed at the rate of eight per cent. per annum, and the plaintiff is entitled to interest at the rate of only eight per cent. per annum upon the principal debt remaining unpaid from time to time, and that said payments should be applied at the time when made, respectively, according to the rule of partial payments, to the payment of principal and interest due at the times of said payments, respectively; (3) that the plaintiff is entitled to recover $670."

From a judgment in her favor for the amount stated in the third conclusion of law the claimant has prosecuted proceedings in error to this court.

*Archie D. Neale,* for plaintiff in error.

*C. D. Ashley, M. E. Williams,* and *W. D. Atkinson,* for defendants in error.

The opinion of the court was delivered by

WILLIAM R. SMITH, J.:   To determine the principal controversy, whether the transaction between Harry H. Lusk and his mother constituted a loan by the latter to her son, it will be necessary to review the evidence on both sides of the question.   It came before the trial court in written form.   We are at liberty, therefore, to exercise an independent judgment respecting the facts proved.   A draft for $5000, the proceeds of insurance on the life of her husband, was received at Parsons by plaintiff in error.   It came in a letter addressed to her son, the late Harry H. Lusk. She returned it to him, indorsed, and he deposited it in the First National Bank to his credit, as agent, on January 31, 1890.   Between that time and September 4, following, the whole amount was checked out in different sums, varying from $425 to $2000.   The checks were signed "H. H. Lusk, agent."   A short time after the deposit of the draft the son gave to his mother a memorandum- or pass-book, in which he had written the following:  "Mrs. Nannie Lusk in account with H. H. Lusk; credit by $5000, deposited in the First National Bank, to be loaned out."   On an opposite page was this entry:  "Mrs. Nannie Lusk in account with H. H. Lusk; debtor, March 3, 1890, to cash on account of interest, $50."   The book was delivered to Mrs. Lusk in the presence of her daughter, Mrs. Bedell, who testified:

"He asked if we all were willing that he should handle this money.   He said he could get ten per cent. interest, he hoped more, and he wanted to know if we had perfect confidence in him and felt that it was safe in his hands.

"Q. What was said with reference to loaning him the money by your mother?   A. She agreed to it; just so it was safe.   He said he knew he could give her ten per cent.; he hoped it might be more."

The witness had a conversation with her brother,

shortly before his death, in which he said that the principal was secure, that it was exactly as when placed in his hands, and requested that the witness and her sister Mabel would never tempt their mother to break it. Mabel Lusk, another sister of the deceased, testified:

"Q. Now you may state, Miss Mabel, what was said by your brother with reference to the borrowing of this money—the rate of interest, and what was said. A. He said he could get ten per cent., and possibly more; possibly twelve per cent., but he knew ten per cent. . . .

"Q. And what did your mother say to him with reference to his having the money at ten per cent.? A. She said she was willing for him to have it."

Laura Lusk, another sister, was present when the draft was turned over by the mother to her son Harry. She testified:

"He said he could get her ten per cent. interest, and perhaps more; that he never wanted her to break the principal; that if she broke the principal she would have nothing."

It was shown that the deceased paid his mother fifty dollars monthly, on the 3d of each month, commencing with March 3, 1890. The last payment was made on November 2, 1902.

There is no contention that the original transaction between mother and son differed in any respect from the history of it as detailed by the witnesses above named. It is conceded that the agreement between the parties was oral. The court below determined that the amount paid Mrs. Lusk in excess of ten per cent. per annum was usurious, and, in addition to forfeiting this excess, added thereto a penalty of two per cent. in applying the requirements of section 3591 of the General Statutes of 1901 to the case. In defending the position taken by the trial court counsel for defendants in error rely chiefly on the fact that twelve per cent. as interest was paid and received for more

than ten years; and, further, that the claimant herself treated the transaction as a loan in the presentation of her demand to the probate court.

It is an essential requisite to a usurious transaction that there be a loan, either express or implied. (*Lloyd v. Scott,* 4 Pet. 205, 7 L. Ed. 833; *Williams v. Reynolds & Smith,* 10 Md. 57; Perley, L. Int. 201.) As against the presumption of a usurious agreement arising from the payment of an amount above the legal rate of interest for a number of years are the express words of the deceased at the time he received the money, acquiesced in by his mother, to the effect that he could get her ten per cent. interest, and perhaps more. This declaration was followed by a deposit of the amount to his credit in the bank "as agent," and its withdrawal from the bank by checks signed by him in the same way. Shortly before his death he asserted that the principal sum had not been impaired. The entries made by him in the pass-book, crediting his mother with $5000, "to be loaned out," is strong corroborative evidence that he acted in the capacity of her agent, and was not a borrower. The payment to her of fifty dollars a month would carry with it a stronger presumption of a usurious transaction if the parties did not sustain the relation of a widowed mother and son. The facts proved, considering the relationship of the parties, lead to the conclusion that the payment of usurious interest for more than ten years by the son to his mother was not made in compliance with a contract in which she exacted the rate received. It is a more rational view to attribute the sums paid every month to a recognition of filial duty on the son's part, regardless of whether the mother's money earned the amount paid to her or not. The court cannot escape from giving heed to those sentiments of parental affection which tend to excite liberality in a son when the support and welfare of his mother are concerned. If the deceased received the

money for the purpose of investing it for his mother, the fact that he may have exacted and collected usurious interest from persons to whom he loaned it, and paid the usurious rate to his mother, is immaterial in this case.

Again, the existence of a usurious contract is never presumed. Where an agreement to pay interest is subject to two constructions, one of which would make it usurious, and the other not, the court will adopt the latter. (*Succession of Bushrod Jenkins*, 5 La. Ann. 682.) The burden is upon the party seeking to impeach the transaction to show guilty intent, and that the contract was a cover for usury. (*Matthews v. Coe*, 70 N. Y. 239, 26 Am. Rep. 583; *Brolasky v. Miller et al.*, 8 N. J. Eq. 789.) The case of *Rosenstein v. Fox*, 150 N. Y. 354, 44 N. E. 1027, is a pertinent authority. It was there said:

"Usury, as a defense to an action upon a promissory note given for a loan of money, is not made out by testimony of the defendant to the effect that upon several occasions after the loan was made he paid the holder of the note more than was due at that time for legal interest, without proof of any usurious agreement between the parties by which the defendant was to pay more than the legal interest for the money loaned."

We quote also from a late case decided by the supreme court of New York, *Bosworth v. Kinghorn*, 94 Hun, App. Div., 187, 87 N. Y. Supp. 983, in which it was said:

"The evidence shows that both the notes sued on were given for loans of money, but there is an entire failure of proof that, at the time the loans were made or the notes given, any agreement whatever was entered into for taking or giving of interest in excess of the legal rate. It is conceded that moneys were paid to the plaintiff, as and for interest, amounting to 10½ per cent. per annum; and, as to each note, it would appear from indorsements, for some years interest was paid at regular intervals of six months, from

which it is argued that an inference may be drawn that that was the rate of interest contemplated by the parties at the times the moneys were loaned and the notes given. But that inference is not admissible in this case. Where there is evidence establishing that the lender has demanded interest in excess of the legal rate, and the borrower has complied with the demand, there is something from which an inference can be drawn that performance was made of an original contract, and in accordance with its terms. Such is the case of *Smith v. Hathorn,* 88 N. Y. 211; but here the payments of interest in excess of the legal rate may have been, and the proof justifies the conclusion that they were, in the nature of gratuities voluntarily made by the debtors, and for the purpose of equalizing payments made to relatives of members of the firm in transactions of some character had with them, and without either solicitation or demand of the payees as holders of the notes in suit. The evidence is altogether insufficient to sustain the defense of usury, and, as the trial justice points out, 'the facts established warrant the application of the rules recognized' in *Rosenstein v. Fox,* 150 N. Y. 363, 44 N. E. 1027, and *White v. Benjamin,* 138 N. Y. 623, 33 N. E. 1037. . . . The cases in which usurious interest has been credited on account of the principal sum are those in which usury, involving the element of intent, was fairly made to appear. The taint must be in the agreement."

This case was affirmed by the court of appeals. (179 N. Y. 590, 72 N. E. 1139.)

We cannot give to the statements in the demand filed by the claimant in the probate court the force claimed for them by the learned counsel for defendants in error. The contention is that, the claim being for money *loaned,* and containing a reference to money *borrowed,* the plaintiff below was concluded by her deliberate designation of the nature of the transaction. The force of the terms mentioned are somewhat weakened by other allegations of the demand, to wit:

"The said Harry H. Lusk promised and agreed to pay to the undersigned interest on the amount so

loaned at the rate of ten per cent. per annum from the date thereof, *and more than that if it could be realized."*

The verification did not go to the nature of the claim. (Gen. Stat. 1901, § 2893.) The statute requires the determination of demands against the estates of decedents in a summary way, without the form of pleading. (Gen. Stat. 1901, § 2899; *Hayner v. Trott,* 46 Kan. 70, 26 Pac. 415.) Statements in such demands should not conclude a claimant to the same extent as if made in a formal pleading filed in the district court. Plaintiff below was entitled to an allowance of her claim, with legal interest from November 2, 1902.

The judgment of the court below is reversed, with directions to proceed further in accordance with this opinion.

All the Justices concurring.