(675 P.2d 379)
No. 55,328

INDIAN SPRINGS STATE BANK, *Plaintiff-Appellee,* and WESTGATE STATE BANK, *Plaintiff,* v. KELLEY'S AUTO SUPPLY, INC., *et al., Defendants,* and DONNA JO RIVES formerly DONNA JO GOIN, *Defendant-Appellant.*

Opinion filed January 26, 1984.

*Richard L. Reid,* of Kansas City, for the appellant.

*Laurence M. Jarvis,* of Laurence M. Jarvis, Chartered, of Kansas City, for the appellee.

Before ABBOTT, P.J., PARKS, J., and HARRY G. MILLER, District Judge Retired, assigned.

MILLER, J.: The only parties involved in this appeal are Indian Springs State Bank, appellee, and Donna Jo Rives, appellant. The appellant has appealed from a ruling of the trial court that her claim of usury was neither a successful defense nor counterclaim in a mortgage foreclosure action brought by the appellee bank.

On February 2, 1977, the appellant and her former husband, Phillip Goin, borrowed $110,000 from the appellee for the purpose of acquiring land and constructing a building for Mr. Goin's auto supply business. The note was secured by a real estate mortgage, and provided for the payment of interest as follows:

"[A]t 8 per cent per annum or 3 per cent over the published New York prime interest rate, whichever is higher, the interest rate to be adjusted semi-annually in February and August of each year. The interest for the first six months to be computed at 9 ¼ per cent per annum  .  .  .  ."

On the date when appellant signed the note, the Kansas usury statute provided for a ceiling on interest rates of "10% per annum

unless otherwise specifically authorized by law," K.S.A. 1977 Supp. 16-207, and the published New York prime rate was 6 ¼%. On December 5, 1978, appellant divorced her husband.

The interest paid on the note in subsequent years exceeded the maximum allowable rate of 10% in effect when the note was executed since the published New York prime rate went up. In March of 1982, the appellee commenced foreclosure proceedings. Phillip Goin filed for bankruptcy, but the appellant answered and counterclaimed that the interest charged by plaintiff exceeded 10% and was therefore usurious.

Although appellant proposed a set of interrogatories to appellee which asked the date of each payment on the note and the rate of interest charged, this information was never offered or admitted as evidence in the trial. Based upon the evidence presented to it, the trial court found that no usury existed because the appellant proved neither an unlawful intent nor an exaction for use of the loan of something in excess of what was permitted by law.

The appellant's sole contention is that the contract is governed by the law fixing maximum interest rates in existence when it was made, and that later statutes raising the interest ceilings are not applicable.

The Kansas usury law has undergone substantial changes since 1977. At that time, the ceiling on interest rates was 10% and the penalty provision, which has not changed substantially throughout the years, provided that "[a]ny person *so contracting* for a greater rate of interest" shall forfeit the amount of the excess interest paid and deduct an equal amount due on principal and lawful interest charges. K.S.A. 1977 Supp. 16-207. (Emphasis supplied.)

The ceiling on interest rates was raised to 11% effective July 1, 1978, for loans secured by a first real estate mortgage. This rate remained in effect until the 1980 legislature substantially changed the interest rate by this amendment:

"(*b*) The maximum rate of interest per annum for notes secured by all real estate mortgages and contracts for deed to real estate executed on or after the effective date of this act shall be at an amount equal to one and one-half percentage points above the average weighted yield of mortgages accepted under the federal home loan mortgage corporation's weekly purchase program effective on the first day of each month unless otherwise specifically authorized by law. . . . The rate of interest upon any conventional loan evidenced by a

note secured by a real estate mortgage shall be the rate quoted in the application executed by the borrower on the day on which application for such conventional loan is made." K.S.A. 1980 Supp. 16-207.

This amendment, providing for the so-called "Freddie Mac" rates, became effective May 17, 1980.

In 1981, the section was again amended to specifically authorize variable interest rate notes:

"(b). . . . In the event the note secured by a real estate mortgage permits adjustments of the interest rate, the maximum rate of interest at the time of adjustment shall be the maximum rate of interest in effect at the time of each adjustment. The *initial* rate of interest upon any conventional loan evidenced by a note secured by a real estate mortgage shall not exceed the rate quoted in the application executed by the borrower on the day on which application for such conventional loan is made." K.S.A. 16-207. (Emphasis supplied.)

The legislature also added a provision exempting business or agricultural loans from such interest ceilings.

The 1982 legislature provided:

"(h) The interest rates prescribed in subsections (a) and (b) of this section shall not apply to a note secured by a real estate mortgage or a contract for deed to real estate where the note or contract for deed permits adjustment of the interest rate, the term of the loan or the amortization schedule." K.S.A. 1982 Supp. 16-207.

There is nothing to indicate that the legislature intended the usury statute to convey any meaning with respect to variable rate loans when it enacted the usury statute in effect at the time appellant signed the note. At that time variable rate loans were neither commonly used by lenders nor generally understood by legislators. The statute, in fixing a single rate limitation for any loan, does not appear to have been written to accommodate or to prohibit an adjustable rate note.

Certain principles have been clearly established in this state regarding usury in the context of fixed interest rates. The burden of proof rests upon the party asserting usury. *In re Estate of Johnston,* 180 Kan. 329, 304 P.2d 461 (1956); *Atlas Acceptance Corp. v. Spurgeon,* 154 Kan. 290, 118 P.2d 535 (1941). The existence of usury will not be presumed. Rather "where an agreement to pay interest is subject to two constructions, one of which will make it usurious, and the other not, the court will adopt the latter." *In re Estate of Johnston,* 180 Kan. at 332; *Investment Co. v. Brown,* 89 Kan. 66, 130 Pac. 665 (1913); *Lusk v. Smith,* 71 Kan. 550, 81 Pac. 173 (1905). Usury statutes are penal in nature and are to be strictly construed in favor of the

lender. *Young v. Barker,* 185 Kan. 246, 342 P.2d 150 (1959). However, where the defense of usury is interposed the courts will look to the substance of the transaction to determine whether it is usurious and will render such judgment as will do justice and vindicate the law. *In re Estate of Johnston,* 180 Kan. at 331; *Loan Co. v. Solomon,* 71 Kan. 185, 79 Pac. 1077 (1905).

*State, ex rel., v. Miller,* 177 Kan. 324, Syl. ¶ 3, 279 P.2d 223 (1955), established that four separate elements must be proved in order to establish usury: (1) a loan or forbearance of money or its equivalent; (2) an unlawful intent; (3) an understanding that the loan be paid; and (4) an exaction for the use of the loan of something in excess of what is permitted by law. These essential requisites of a usurious contract were approved in *In re Estate of Johnston.*

A recent case, relied on by appellant, has affirmed that an increase in the usury ceiling will not apply retroactively to contracts entered into prior to the effective date of the statute. *Schulte v. Franklin,* 6 Kan. App. 2d 651, 633 P.2d 1151 (1981). That case did not involve a variable rate contract, however, and the facts bear little resemblance to the facts in this case.

With these standards in mind, we have reviewed the record to determine whether the trial court's findings are supported by substantial competent evidence. See *Levi Strauss & Co. v. Sheaffer,* 8 Kan. App. 2d 117, 650 P.2d 738 (1982).

There was admitted into evidence a set of uncontroverted facts. Among these, the appellant admitted that all negotiations for the loan took place between her former husband and the bank officers and that she merely signed the note, and that neither her husband nor the bank officers intended to contract for any interest in excess of the maximum lawful rate. These admissions were corroborated by the bank officers, who also testified that the bank intended to cut its note rate to the Kansas statutory maximum if the New York prime rate plus 3% exceeded the statutory limit.

Barkley Clark, a law professor at the University of Kansas specializing in commercial banking and credit law and an adviser to the Kansas legislature about interest rates since 1971, testified that variable interest rate loans have always been a matter of freedom of contract and are recognized in this state. Mr. Clark stated that variable rate notes look to the future, and that

each time an adjustment is made one looks to see what the maximum interest rate is at that time and stays below it. He added that although some notes now include a "cap" or "savings" clause, earlier notes made in the late 1970's generally did not. He also testified that 75% of the loans now made by banks are variable rate loans, and that the "Freddie Mac" rate itself has never exceeded 15%.

Testimony at the trial revealed the following facts concerning the dates and rates of interest paid on the loan: On February 2, 1977, appellant was charged 9.25% interest and the Kansas usury ceiling was 10%. Thus the note was not usurious at the date of its inception. On April 18, 1980, appellant was charged 11%, and the Kansas usury ceiling was then 11%. On June 9, 1980, appellant was charged 16%. The Kansas usury ceiling was then a floating rate of "Freddie Mac" plus 1½%. Barkley Clark testified that at its highest, the "Freddie Mac" rate had reached 15% but did not state exactly when that occurred. If the "Freddie Mac" rate was 15% on June 9, 1980, then 16% would not have been usurious.

Testimony was also offered that appellant had been charged 22%, but the dates of such charges were never offered into evidence, and the trial court had received evidence that after July 1, 1981, the "business purpose" exemption (K.S.A. 16-207[e]) would have removed all interest ceilings on the note in question.

On the basis of the evidence before it, the trial court did not err in concluding that appellant had failed to prove that appellee had exacted interest in excess of the statutory ceiling at the time of each adjustment.

With the recent growth in the use of variable rate loans, many usury problems have arisen. Several different approaches have been suggested for solving these problems, including the "separate contract" theory and the "aggregate analysis" theory. See Randolph, *Home Finance in the Shadow World: Unsolved Usury Problems Affecting Adjustable Rate and Wraparound Mortgages in Missouri,* 51 UMKC L. Rev. 41, 51-54 (1982).

Under the "separate contract" theory, each adjustment period is regarded as a separate contract period, and no usury is found if the interest charged for such period does not exceed the statutory maximum in effect at the time of the adjustment.

Under the "aggregate analysis" theory, the average return of interest is computed by spreading the total interest charged over the full term of the note, and usury is found if the average rate as thus computed exceeds the statutory maximum in effect at the time the note was signed.

Other jurisdictions have used these approaches but have reached different conclusions. See *Kin-Ark Corp. v. Boyles,* 593 F.2d 361 (10th Cir. 1979); *McConnell v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 21 Cal. 3d 365, 146 Cal. Rptr. 371, 578 P.2d 1375 (1978); *Sailboat Apartment Corp. v. Chase Man. Mortg.,* 363 So. 2d 564 (Fla. Dist. Ct. App. 1978); *Bamburg v. Lavigne,* 403 So. 2d 827 (La. App. 1981); *O'Brien v. Shearson Hayden Stone,* 90 Wash. 2d 680, 586 P.2d 830 (1978). Most of these cases, however, present different factual situations and usury statutes than those presently before this court.

In the case before this court, the note was not usurious when made. The evidence was uncontradicted that the parties negotiating the note had no intention of charging interest in excess of the statutory ceiling rate. While parties cannot validly contract to violate the usury ceiling, we perceive of no reason why the parties cannot in good faith contract to take advantage of that ceiling in the future. The index used in determining the interest rate adjustment is beyond the control of the lender, and, in general, fluctuates closely with the cost of money to the lender. At the time the parties contracted, neither had any reason to anticipate the extent of its escalation.

Usury laws in general were designed to protect needy borrowers from unscrupulous lenders. That view of the law should therefore be adopted which will accomplish that purpose. The statutes should not be converted from "shields of protection into swords of offense." 45 Am. Jur. 2d, Interest and Usury § 8, p. 22.

In the present case, the trial court not only found that there was no intent shown on the part of the appellee to violate the usury laws, but also found no evidence that the appellee at any time exacted a charge in excess of the legal limit at the time of the adjustment. These findings are supported by substantial competent evidence.

Affirmed.